Thomas T. Lea & others *vs.* Andrew Robeson, Jr., & others.

In a bill in equity to enforce rights depending on the construction of a written contract set forth in the bill, the construction alleged, if not the true one, is not admitted by a demurrer.

Insolvent debtors conveyed their property to assignees for the payment of their debts; the assignees issued certificates to the creditors of the amounts of their claims, and after payment of certain dividends, the assignees and creditors agreed that the remaining assets should be specifically valued so as to equal in all the sums remaining due to the creditors, and should be sold by auction in lots to the creditors at such valuations as minimum prices, and be taken by the purchasers in payment of their claims, and any surplus obtained should constitute a fund for a future dividend among the creditors according to the amounts of their original claims. One of the creditors indorsed on the certificate of his claim a memorandum addressed to the assignees, by which he assigned " my demands on you for the debt within named to A., without recourse to me in any event, and authorize you to make all settlements with him; " and by a similar paper assigned to A. " all my right,

title or interest in and to a certain portion of a certified claim to K., now held by me, said portion amounting to $1335, and authorize you to make settlement of above sold portion of said claim with him;" and A. rendered an account to this creditor, in which he credited him with "balance of your claim on estate" of the debtor "and for $1335 of claim of K.," each fifty per cent. of the original claim. *Held*, that A., by these transfers, acquired the interest of this creditor in the surplus fund belonging to the transferred debts as well' as in the debts themselves; that parol evidence was inadmissible to vary the terms of these assignments; that a demurrer to a bill by this creditor against A. and the trustees, which set forth the written transfers, and alleged that the plaintiffs reserved all right in the surplus fund, did not admit that fact; and that the plaintiff, after the demurrer had been sustained, could not amend his bill by alleging a mistake in the terms of the transfers, notice thereof to A., and his reply that he claimed only a part of the surplus fund, proportionate to the portions of the claims which were unpaid at the time of the assignment.

BILL IN EQUITY, filed April 30th 1857, by Hacker, Lea & Co. against Andrew Robeson, Jr. and Thomas D. Eliot and others, containing the following allegations :

1st. That on the 7th of January 1848 Andrew Robeson, Jr. and others, partners under the firm of Andrew Robeson & Sons, being insolvent, conveyed and assigned in writing to said Eliot and others, certain large and valuable real and personal estates, in trust to convert the same and apply the proceeds of the estates of Andrew Robeson to the payment of his individual debts, and any surplus thereof and the proceeds of the property of the firm to the payment of the sums due to such creditors of the firm as should become parties to the assignment, and release the assignors.

2d. That the trustees accepted the trust, and received conveyances of the estates, and were bound to apply the same for the benefit of such creditors as should become parties as aforesaid, and applied so much of Andrew's separate estate as was necessary to the payment of his separate debts, and thereafter held the surplus thereof and all the property of the firm in trust for the benefit of the creditors thereof.

3d. That the plaintiffs were creditors of the firm to the amount of $110,937.91, and became parties to the assignment, and received from the trustees a certificate dated January 29th 1849, admitting that the plaintiffs are " entitled to receive, under the provisions of the assignment " aforesaid, " all dividends which shall be declared payable in respect of " their said

claim ; that the trustees also issued similar certificates to the other creditors ; and that the plaintiffs' original claim was reduced, by certain real and personal estate and dividends, to the amount of $30,295.20.

4th. That in June 1850, the affairs of the firm and assign- ments being in an unsettled state and without prospect of bring- ing them to a close, it was proposed and agreed that all the assets on hand should be specifically valued so as to equal in all the sums remaining due to the plaintiffs and other creditors, and should be sold by auction in lots to the creditors at such valuations as minimum prices, and be taken by the purchasers in payment of their claims, and any surplus obtained beyond the valuations constitute a fund for a future dividend among the creditors according to the amounts of their original claims.

5th. That all the creditors consented to this proposal except William I. King & Co., who refused so to do, and whose claim the plaintiffs purchased, and thereby became creditors of the firm of Robeson & Sons in the further sum of $12,361.64, and were recognized and admitted as such, and received an assignment of their certificate.

6th. That before said sale Andrew Robeson, Jr. agreed with the plaintiffs and other creditors to purchase certain of said estates for them at said sale, and did make such purchases, but after the sale refused to perform his part of the agreement, pre- tending that he had not bid in their behalf.

7th. That afterwards the plaintiffs agreed with said Robeson to sell to him the unpaid balance of their original claim and a portion of their King claim for fifty per cent. on the face thereof, and caused to be made on their certificate of their original claim, on which the payments already made were indorsed, this in- dorsement : " November 26th 1850. To assignees within named. Gentlemen : We hereby assign our demands on you for the debt within named to Andrew Robeson, Jr., without recourse to us in any event, and authorize you to make all settlements with him ;" and also signed another paper in the following words : " To assignees of A. Robeson & Sons. Gentlemen : We hereby assign to A. Robeson, Jr. all our right, title or interest in and to

a certain portion of a certified claim of W. I. King & Co. against the estate of A. Robeson & Sons, transferred to and now held by us, said portion amounting to $1335, and authorize you to make all settlements of above sold portion of said claim with him ; " and said Robeson made to them an account, in which he gave them credit, " by balance of your claim on estate of A. R. & S. transferred for fifty per cent. of amount, claim $30,295.20, fifty per cent. $15,147.60 ; by your order on assignees of A. R. & Sons for $1335 (on account of claim of Wm. I King & Co. transferred to you) at fifty per cent. of amount as agreed, $667.50 ; $15,815.10."

8th. That at said sale by auction, though the estates were valued much above their market value, yet as some lots were considerably more desirable than others, they were sold above the valuation, and a large amount remained in the hands of the assignees, after nominal payment in full of all claims, and which belonged to the creditors in proportion to the amount of their original claims, and was to be divided among them accordingly.

9th. That upon such nominal payment in full, the assignees required of the creditors the surrender of their certificates, but without any intent to affect their rights in the remaining property, or any pretence that it belonged to said Robeson, or Robeson & Sons, as the original owner or owners thereof, who neither had nor pretended to have any such right, but admitted that it belonged to their creditors.

10th. That the right of the plaintiffs to their proportion of said property or premiums was not sold by them to said Robeson, nor purchased or paid for by him ; the agreement between him and them being that he should buy the balance of their original claim, being $30,295.90, and a part of the said King claim, amounting to $1335, and pay therefor fifty per cent. of the face thereof, which agreement was carried into effect; the plaintiffs reserving to themselves the balance of the King claim and the rights to the proportions of said premiums belonging to them as creditors for the amount of their original claim of $110,937.91, and for the original amount of the King claim.

11th. That the assignees afterwards caused a valuation to be made of the amount remaining in their hands, for the purpose of making a dividend thereof, and found it to be equal to 4.95 per cent. on the amount of the original debts due from Robeson & Sons to the parties to the assignment, and declared a dividend of that amount, and the plaintiffs as creditors in their own right were entitled to receive a dividend of 4.95 per cent. on the sum of $110,937.91, and as purchasers of the claim of the said W. I. King & Co. were entitled to receive a similar dividend on the sum of $12,361.64.

12th. That the assignees, although requested, had refused to pay or convey to the plaintiffs their proportions of the value of the estates remaining in the hands of the assignees after the nominal payment in full; insisted that by the arrangement of the plaintiffs with Robeson he was entitled to the same, except on the balance of the King claim, and had transferred them to him without the plaintiffs' knowledge or consent, and in violation of their rights; and that Robeson agreed to purchase of the plaintiffs only their claims in the hands of the assignees to a certain fixed amount, and to pay therefor fifty per cent. of the face thereof, did not agree to buy and did not pay for their interest in the surplus assets, and had no right thereto, and never pretended to have any, or denied the plaintiffs' right, until recently.

The bill prayed for an account, for a decree for a conveyance to the plaintiffs of the proportions of the estate justly due to them, and for further relief.

The other defendants filed pleas. Andrew Robeson, Jr. demurred to the bill, because the plaintiffs had not shown themselves to be entitled to the relief prayed for; and because upon their own showing the entire amount due and unpaid of the plaintiffs' original claim, and such portion of the claim of W. I. King & Co. assigned to the plaintiffs as amounted to $1335, with so much of the surplus assets as equitably appertained to those claims, had been for valuable consideration sold and assigned by the plaintiffs to this defendant on the 26th of November 1850, and were now his property.

*E. Ames,* in support of the demurrer, cited Welf. Eq. Pl. 282

and authorities there cited; Story Eq. Pl. § 503; *Haskell* v. *Tilton,* 30 Maine, 419; *Whitbread* v. *Brockhurst,* 1 Bro. C. C. 409; *Redding* v. *Wilkes,* 3 Bro. C. C. 400; *Field* v. *Hutchinson,* 1 Beav. 599.

*F. C. Loring,* for the plaintiffs. A bill will not be dismissed on demurrer for want of equity unless it is absolutely clear and certain that it must be dismissed at the hearing. Dan. Ch. Pract. *c.* 13, § 1. This bill alleges, and the demurrer admits, that the plaintiffs sold to the defendant the balance of their original demand only, expressly reserving their right to the surplus fund; that the plaintiffs were entitled to the dividend out of the surplus fund; and that the defendant never bought it, or intended to buy it, or paid for it, or until recently claimed any interest in it, but admitted that it belonged to the plaintiffs. The reason of the rule excluding parol evidence in relation to written contracts does not apply when the defendant admits the true construction to be as the plaintiff alleges. 2 Story on Eq. § 755. *Attorney General* v. *Day,* 1 Ves. Sen. 221.

The surplus was no part of the debt, but arose out of a subsequent transaction, and was separable from the original debt. The assignment to the defendant, and the account rendered by him, are both limited to the unpaid balance of the defendant; and if the other facts stated raise a question whether the interest in the surplus fund was also included, it is a latent ambiguity, and may be explained by parol evidence. *Knight* v. *New England Worsted Co.* 2 Cush. 283. *Wadsworth* v. *Ruggles,* 6 Pick. 63. *Doe* v. *Burt,* 1 T. R. 701. 1 Greenl. Ev. § 281.

SHAW, C. J. All the facts well pleaded in a bill are admitted by demurrer. But if a party sets forth an agreement in writing, and all the circumstances to give it its proper and legal effect, and then avers that he did not assign by that agreement certain things which might or might not be within it, it is the averment of a conclusion of law from the agreement; or it alleges another and parol agreement inconsistent and incompatible with the written agreement, which it would not be competent to control by parol evidence; and in either case the defendant may safely demur.

If it is a question of construction of the agreement, that is open on the demurrer, and the plaintiff has the full benefit of it. If the plaintiff actually intended to offer a parol agreement of what was intended to be granted by the assignment, that is, of the negotiation, if it was not repugnant to the written agree·ment, not a different contract, in different terms, it would be useless and unnecessary; if it was, it would be inadmissible.

It seems to us that the averments in the tenth and eleventh articles of the bill are of this character. The written evidence consisted of the assignment and order on the assignee's certificate of the amount due to the plaintiffs from the estate of Robeson & Sons. If we refer to the simultaneous document, the account made out by Andrew Robeson, Jr. to the plaintiffs, in that he credits them with " balance of your claim on estate transferred," &c. This was describing it as the nominal claim. It was the whole of the original claim reduced by dividends.

But the amount remaining in the hands of the assignees was not a surplus after payment of all the debts. If it had been, the balance — the surplus — would have belonged to the assignors. When therefore the plaintiffs say that it was distinctly under-stood that it did not belong to their assignee; that the apparent payment in full was but a nominal satisfaction; and that after-wards there was a deficit, and the whole of the assets in the hands of the assignees belonged to the creditors; they in sub-stance aver that this was not a surplus after payment of debts.

We are of opinion that the effect of the contract between the original creditors (the plaintiffs) and Andrew Robeson, Jr. was to transfer to him what was coming to them as creditors, at the rate of fifty per cent. of the nominal amount then due, that the whole was so bought and paid for, and the whole passed.

*Demurrer sustained.*

The plaintiffs then moved for leave to amend their bill by striking out the seventh clause, and instead thereof alleging that afterwards negotiations took place between Andrew Robeson Jr. and the plaintiffs, and it was finally agreed that they should sell to him the unpaid balance of their original claim and a por-

tion of the King claim, but no right, title or interest in the sur-plus fund, at the rate of fifty per cent. on the face thereof, and the plaintiffs requested William C. Chapin, as their agent and attorney, to make the necessary indorsements or assignments upon their certificates of debt, to vest in Robeson what he had so agreed to purchase, and Chapin made the assignment before recited, and a similar indorsement or assignment was made of a portion of the King claim ; that, in making the same, by accident or mistake it was omitted to be stated that all interest in the surplus fund was reserved to the plaintiffs ; that the plaintiffs, being informed of the form of the assign-ments, immediately became apprehensive that they might be construed to assign to Robeson their interest in the surplus fund, and so informed Chapin, who advised them that it was not so understood, and for their satisfaction inquired of Robe-son in writing if he so understood it, and he replied in writing that he claimed only the interest in the surplus fund appertain-ing to the portion of the claims which he had purchased, and the plaintiffs would be entitled to any dividend which might be payable on so much of their demand as had been paid before or purchased of them ; that this reply was communicated to the plaintiffs, and although not according to their understanding of the agreement by which they reserved all interest in the surplus fund, yet for the sake of peace they were willing to acquiesce in it, and should have done so if he had not set up a claim to their whole interest in the surplus fund ; that he afterwards ren-dered an account, as stated in the original bill ; and that the plaintiffs afterwards had negotiations with the assignees and Robeson, at which the plaintiffs' right to the surplus fund were admitted by them.

This motion was argued by the same counsel.

SHAW, C. J. The amendment proposed would raise only the same questions which have been decided on the demurrer.

It offers to vary the case by parol evidence, which we have held inadmissible to vary the written assignment, or to correct the contract by Robeson's letter, if the plaintiffs meant to rely on that as the true evidence of the contract. But they held this

letter, and yet, until since the decision upon the demurrer, they claimed to be entitled to the whole of the surplus dividend, being a greater sum than the letter upon their own construction would give them.

The letter, as stated, does not import that any dividend was payable on the part of the debt theretofore paid, the $80,642.71. All that was paid in full; what remained to be received was incident to the unpaid part. The circumstance that it was not payable to the original assignors shows that what is called surplus does not pay the debts of the *cestuis que trust.* After the application of the surplus the whole balance was not paid, because a great part of that which was treated as payment was made in property at a conventional value, beyond its true value. *Motion overruled.*